Chancellor Mathews
delivered the decree of the courts
In this case there are several claims of a distinct and separate nature. It has been stated that these claims are original or derivative, direct or collateral; that is, such as immediate engagements with, or devises to, the complain-aut> or such as alight upon him by mere operation of law. Of the first class is the claim upon the house No. 101, in Meeting-street. , Second, of four hundred pounds, old currency, bequeathed by the last will of his grandmother, Mary Fauclieraud. Third, of two thousand pounds sterling, promised by his father as a marriage portion.
John Paul Grimke, by a letter dated the 26th October, 1782, writes to his son, the complainant, as follows: ££ If you can contrive the deeds for my house I now live in to como to you, and. be entirely your own property after my and your mother’s death, then have them drawn, and I will execute them when you come to town.”
The complainant, on the 7th February, 1788, writes to his father, requesting to know ££ which of his houses he intended for Mm, as he wished to tile the one which *377 ¡should he \mf and the father, by his answer, confirmed io him the right in the house No. 100, of which In has (lince been constantly possessed. And in several letters, of daten subsequent to the father's letter, he acknowledgen himsdf perfectly satisfied with the provision made for him by his father, though No. 100 was not the one originally spoken of, and not so valuable as No. 10J.
It vuis considera! then by the court, from the whole tenor of the ct hkv.ee, that this ¡udetaraiinate engagement of the lather, entered into from mere good will, without any special consideration moving thereto, was acquiesced in by the aonj and that in satisfaction thereof, independent of other provision, he held the house No. 100, without complaint till his father's death.
2d. A legacy of four hundred pounds was left to the complainant by Mary Faucheraud, his grandmother, Which came to the hands of John Paul Grimke as natural guardian of the complainant, to be kept for his advantage, and to be paid him upon his arrival at Ml age. This legacy was discharged by payment of an old bond of German & Charles Wright, whoso estate was afterwards *378 confiscated, and which has since proved insolvent Th? complainant gave to his father a full discharge for this legacy; but since the date of his receipt to his father the E'e:'ian<^ against the confiscated estate lias been returned to the father, and since his death Isas been found among his papers. A letter of Jolin Paul Grimke to the complainant has the following paragraph: “ Then return me again said assignment, provided it is not recorded, and Í will find some other way to pay you said legacy.” And in another letter, dated April, 1788, he says, “Let this money for the legacy be deducted out of Olyphant’s bond.” Wo then cannot but consider the efficacy of the discharge rendered abortive by these subsequent undertakings of the father; more especially where it appears that the consideration for which the receipt was given, had actually failed, without any improper delay in the complainant. But it has been contended, that by the same paragraph in which he re-assumes the payment of the legacy, he has also appointed the fund out of which it shall be paid. Yet by his letter to Mr. Smith, and also in a letter of anterior date to his son, he expressly enumerates this bond as one given to his son for his advancement. We will then receive this equitable re-assumption of the debt, discharged 1'rom condition of payment out of a fund, over which the father then had no control.
The next direct claim of the complainant is the sum of 2000?. promised by his father as his marriage portion. It was not disputed, but that this promise had been originally made; but three grounds of objection were made by defendant’s counsel. 1st, That the promise was made on condition that the complainant should assure the defendant’s testator, that on failure of issue in himself, the 2000?. should return to the family of John Paul Grimke, which condition he never complied with. 2d, That the 2000?. must have been intended to he paid out of such facilities or securities as he then held, there being little'or no money at that time in circulation. Sd, That in payment or discharge of the marriage portion (if decreed by the court) an account of monies advanced, and of other things given by his father, should be admitted. The first objection *379 w as obviated by the production of John Paul Grimke’s letter without date, wherein he says, “ As I do not desire the. bond from you to refund according to your own promise,” Ac. And it was also urged by the complainant's counsel on the authority of several well adjudged cases, particularly 1 Wilson, 118, Powel on Powers, 163. and Powel on Contracts, 165, that any condition annexed secretly to an agreement of this nature, whereby a third person may he, imposed on, shall be void. And in this ease Mr. Smith having given to his daughter 20001. absolutely and unconditionally, the complainant in reason should not have been hound down to such unfair terms; if therefore the condition had not been avoided by the subsequent declaration of John Paul Grimke himself, Ibis event would have released the agreement from the imposing condition annexed to it. The second objection was not sustained by any evidence, but merely submitted to the court as the probable intention of the parties at that time, taking into view the situation of the country, and the nature of all the transactions of that day. Upon mature deliberation, W'e do not conceive ourselves authorised from mere suggestion, without auy evidence to support us in so doing, to alter the reasonable and equal agreement of the parties; especially as it w7as in evidence that the complainant constantly refused to receive any thing but money, or the full value in good property in discharge of his marriage portion; in like manner as he had received from the father of the lady with whom he had married under the full permission and consent of his father, and with his written assurance of giving him 20001. for the express purpose of equalizing his fortune with her’s. Bow then is this to be done? Not surely by receiving in payment securities, in which there wTas no security? A par A or the whole of which, from the fluctuation of the. times, might eventually he of little or no value. This would he unequal and inequitable. Unequal, because Mr. Smith’s inducement for advancing 20001. to his daughter, would thereby be lost; and inequitable, as imposing on his son a shadow for a promised substance. With respect to those claims which alight upon the party by the mere, operation *380 of law, the complainant’s counsel have stated as follows". “ That Mary Grimke, mother of the complainant, was entitled under the will of Mary Faucheraud, her mother, the sum of six thousand pounds old currency; and also by the same will to one other sum of 1000Z. like money; and that she was also entitled to afurther sum of 5000/. like money, under the will of Gideon Faucheraud. And that she was entitled to a further sum of 200/. like current money, under the will of Susanna Villeponteaux; amounting in the whole to the sum of 12,200/. old currency, which sum John P. Grimke in Ms life time reduced into possession, and thereof had the use and advantage; and at his death left incorporated with his other estate. That the mother, Mary Grimke, in the life time of John P. Grim-ke her husband, made her will in writing, with his express approbation and consent, be having written with Ids own hand a will for her, of which the one executed by her "was a mere transcript. John P. Grimke by his last will bequeathed three negroes, and one third pari of his residuary estate to his wife Mary Grimke, so that at the death of the said Mary Grimke, supposing her will to be valid as to all the interest contended for by the defendants, she had disposed of to her two daughters, Mary Grimke, and Anne Coslctt, the sum of 12,200/. old currency, with interest, and the three negroes, with one third part of the whole residuary estate of the said John P. Grimke. But the complainants object, 1st, That the will is altogether invalid, as having been made during the life time of John P. Grimke, and never republished since his death. 2d, That even if the court should overrule this objection, that nothing would pass by the will so far as relates to the legacies left by Mary Faucheraud, Gideon Faucheraud, and Susanna Yilleponteaux, as these were made to her whilst covert, and not to trustee for her use; and therefore, in fact, was a bequest to the complainant’s father, and shall be deemed a pari of his residuary estate; to one third of which the mother was entitled, and ivhich will bo distributed among the complainant and his sisters according to law. 3d, The complainant contends that in the event of the 12,200/. being decreed to be well *381 disposed of, that no interest should be allowed on it, being expressly given for the support and maintenance of Mary Grimke. 4th, That no part of the father’s estate intended for the mother, can be conveyed by her will, it having been executed in the life time of the father before the legacy was vested, and never republished according to the act of the assembly of 1739. The first objection under common circumstances, we conceive would bo fatal,- but certainly an express and written consent of the husband will enable the wife to convey a property given for her separate use; and he by such declaration shall be considered as trustee to carry such will into effect. 1 Fonb. DS, which opinion is there supported by several respectable quotations. In this case the husband may, with propriety, be said to have made this will himself for so much of the estate, as lie was the composer of the will, it being originally in his own diction and hand writing, and merely transcribed and executed by the wife. This then shall be deemed a sufficient assent by him to enable her at all events to bequeath those legacies, and the will pro tanto needed no rcpubiication, and shall not be void in toto. The second objection has been necessarily obviated in answering the first. The third objection this court will sustain, because it appeal's from the words of the wills, under which these bequesta were made, as well as from the reason and nature of the. case, that the interest arising on these several sums of money were to go for the support and maintenance of Mary Grimke the legatee; and were a contrary opinion to prevail, what husband of a moderate fortune would receive a legacy which would seduce his family into a more extravagant style of living than his circumstances would warrant; but which his estate must eventually, after the lapse of many years, make good with an immense accumulation of interest? We are of opinion that the fourth objection ought to prevail; a rcpubiication of the will being necessary to convey an interest which accrued to, and was vested in her after the execution of her said will: and the court decrees that the will can pass no part of the estate devised by John Tail! Grimke to Mary Grimke his wife. To sum uu >.Im *382 whole of this case then, this court decrees, 1st, That the^ AVjp refuse their aid to carry into effect the agreement respecting the house No. 101. 2d, That the legacy of 400Í. old currency be paid with interest, to he computed from 12 months after the death of Mary Faucheraud. 3d, That the sum of 2000k sterling be paid with interest from the time of his intermarriage with Miss Smith. 4th, That the will of Mary Grimke does not convey a right to any estate derived by hex1 from John P. Grimke, and that such estate shall be equally divided between the complainant and Mary Grimke, and Ann Coslett. And lastly, that the legacies amounting to 12,0001. old currency, draw no interest until the death of Mary Grimke, and that from thence legal interest be allowed thereon. That it be refei’red to the master to ascertain the several sums due under this decree. — And that the costs of suit be paid by defendants.